UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
KARA LEE HEWETT,

                           Plaintiff,                     12 Civ. 1713 (PKC)

          -against-

                                  MEMORANDUM AND ORDER

KEVIN LEBLANG, *as attorney for Barclays Capital*, BARCLAYS CAPITAL, DR. MARTIN BASKIN, BARCLAYS PSYCHIATRIST, ALLISON KRAMER DEEB, YURI KUZMYCZ, ROBERT DIAMOND, MICHAEL EVANS, ANGELA HILAS, KIM BAKER and M.D. SOLOMON MISKIN,

                          Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

                Plaintiff Kara Lee Hewett asserts employment discrimination claims arising out of the termination of her employment with defendant Barclays Capital, Inc. ("Barclays").  Plaintiff also alleges that defendants subjected her to an unlawful strip search and violated her due process rights, and that she executed a waiver of all claims while impaired by prescription pharmaceuticals and respiratory illness.

                Barclays and defendant Kevin Leblang move to dismiss plaintiff's Amended Complaint (the "Complaint") pursuant to Rule 12(b)(6), Fed. R. Civ. P.  They argue that the plaintiff, who is pro se, agreed in May 2011 to release all claims against the defendants in exchange for a payment of $75,000, and that this release bars her present action against them. They also contend that plaintiff fails to plausibly allege any claim for liability.  Defendant Martin Baskin has separately moved to dismiss under Rule 12(b)(6).

For the reasons explained, the plaintiff is bound by the settlement agreements executed in May 2011, and she has otherwise failed to state a claim for relief.  The motions to dismiss are therefore granted, and all claims against all defendants are dismissed.

BACKGROUND

I.      THE COMPLAINT'S ALLEGATIONS.

For the purposes of the defendant's motion, all nonconclusory factual allegations are accepted as true.  S. Cherry St. LLC v. Hennessee Grp. LLC, 573 F.3d 98, 100 (2d Cir. 2009); see also Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949-50 (2009).  All reasonable inferences are drawn in favor of the plaintiff as non-movant.  United States v. City of New York, 359 F.3d 83, 91 (2d Cir. 2004).

Plaintiff worked in the Barclays Information Technology Department.  (Compl't at Ex. 2.)  According to the plaintiff, she was terminated on May 6, 2011.  (Compl't Narrative at 17.)  In a 55-page Amended Complaint, plaintiff asserts claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII") and the Americans with Disabilities Act, 42 U.S.C. § 12112, et seq. (the "ADA") based on defendants' termination of her, the alleged failure to hire her, their refusal to accommodate her disability, unequal terms of employment, retaliation and sexual harassment.  (Compl't at 1-3.)  She also asserts that her constitutional rights were violated, and sets forth a promissory estoppel claim.  (Compl't Narrative at 2-3.)

A.   Plaintiff's Allegations of Disability-Based Discrimination.

According to plaintiff, she suffers from chronic respiratory ailments, including allergies and lung infections.  (Compl't Narrative at 5.)  Beginning in November 2010, she experienced recurrent lung infections over a seven-month period, leading to "severe asthma attacks."  (Id. at 10.)

In November 2010, she used her five-day annual allotment of sick days.  (Id. at 10.)  In January 2011, while still employed at Barclays, she experienced another lung infection and missed eight more days of work.  (Id. at 10.)  As described in the Complaint, her manager, defendant Yuri Kuzmycz, "confronted her . . . and required that she apply for short-term disability."  (Id. at 10.)  Barclays approved plaintiff's absence on the basis of short-term disability.  (Id. at 10.)  In February 2011, plaintiff requested to work a daytime-only schedule, and was granted permission to do so for two weeks.  (Id. at 11, 35.)

Plaintiff states that she requested accommodation for her disability and that Barclays refused.  (Id. at 32.)  She states that such an accommodation might include telecommuting.  (Id. at 11.)  Plaintiff alleges that she offered to provide a note from her mother, a clinical psychologist, describing her condition, but that her mother "was disallowed as a medical expert because of the family relationship."  (Id. at 11.)

On March 12, 2011, plaintiff filed a charge of discrimination with the EEOC, asserting that Barclays did not reasonably accommodate her, was liable for sexual harassment and discriminated against her based on gender and disability status.  (Compl't Ex. 19.)

According to plaintiff, on March 21, her manager threatened to terminate her if she continued to telecommute.  (Compl't Narrative at 35.)  On March 31, defendant Allison Kramer Deeb, a human resources employee, wrote to plaintiff stating that she had not explained why telecommuting was the only reasonable accommodation for her condition.  (Compl't Ex. 16.)  The letter stated that plaintiff had not provided meaningful documentation about her condition and that an independent physician was needed to examine plaintiff.  (Compl't Ex. 16.)  The letter noted plaintiff's right to confer with legal counsel on the issue.  (Compl't Ex. 16.)

According to plaintiff, Deeb threatened to terminate plaintiff if she was not reviewed independently.  (Compl't Narrative at 22, 25-26, 34.)  A psychiatrist, defendant Solomon Miskin, and a pulmonologist, defendant Martin Baskin, independently examined plaintiff.  (Id. at 20, 22, 26.)  The examinations "include[ed] a strip search from above the waist," which plaintiff states amounted to an unreasonable search without due process.  (Id. at 26.)  She asserts that Miskin concluded that plaintiff suffered from emotional distress due to illness.  (Id. at 31.)

As described in the Complaint: "Around that time Kara asked: Is it murder or homicide if she dies in the office building from a lung infection?"  (Id. at 35.)  A psychiatrist retained by Barclays then evaluated plaintiff's mental health and concluded she was "not a direct threat" at the workplace.  (Id. at 39.)  According to plaintiff, the psychiatrist attributed this remark to stress: "[T]he psychiatrist described her weeks of plastic-wrapped Kleenex tissue samples from her most recent lung infection that she brought to the psychiatric evaluation as medical evidence of illness."  (Id. at 39.)  Plaintiff also asserts that her comments about murder and homicide should not be construed as a suicide threat, but that suicidal individuals are nonetheless protected under the ADA.  (Id. at 40.)

As discussed in greater detail below below, on May 17, 2011, during the course of an EEOC mediation, plaintiff and Barclays entered into a separation agreement and a related settlement agreement, which included a general release of claims in exchange for payment to her of $75,000.

Plaintiff contends that she was terminated due to a disability, and that it was more cost-effective for Barclays to terminate her than to provide reasonable employment accommodations.  (Id. at 33.)  Plaintiff asserts that although she was an at-will employee of

Barclays, she nevertheless could not lawfully be terminated for discriminatory reasons.  (Id. at 33.)  She states that Barclays "regularly" denied her requests for accommodation in the six months preceding termination.  (Id. at 35.)  Plaintiff alleges that she was wrongfully terminated based in part on the conclusion of Deeb, who cited "insufficient medical information" as one basis for termination.  (Id. at 20.)  Plaintiff asserts that she provided sufficient documentation as to her illness, and that she was drug- and tobacco-free.  (Id. at 20, 27.)  Plaintiff alleges that in her 2010 performance review, she met expectations in all but one area.  (Id. at 43.)

   B.  <u>Plaintiff's Allegations of Sex Discrimination.</u>

   Plaintiff alleges that she was sexually harassed by a non-party vice president who "pressured her for dinner/drink dates," "stalked her," "mailed her a sexually themed gift, a whipped crème dispenser," and continued to solicit her for dates "after she requested his return address."  (Id. at 44.)

   She also contends that defendant Yuri Kuzmycz asked her if she had sex with every man she dated.  (Id. at 10, 44.)  "He asked if she had any tattoos and specifically inquired about a tramp stamp which is a lower back tattoo indicating sexual promiscuity."  (Id. at 10.)  He described "a Ukrainian tattoo on his lower neck/upper back area" and said that it was "faded." (Id. at 11, 44.)  "He suggested that Kara was a whore."  (Id. at 11.)

   C.  Plaintiff's Allegations Concerning the Agreements to Waive Any Claims in Exchange for $75,000.

   According to plaintiff, on May 17, 2011, defendants Deeb and Leblang coerced plaintiff into executing the agreements in which she waived any claim concerning her employment at Barclays.  (Id. at 16.)  Negotiations occurred "at an unusual and inappropriate time," she asserts.  (Id. at 29.)  She contends that her illness caused her to make "extremely poor" decisions.  (Id. at 16.)  As described by the plaintiff:

> Kara was not of sound mind and memory and in emotional distress
> at the time of the EEOC settlement agreement because of illness,
> emotional distress from illness, emotional distress from
> unemployment while disabled, a tranquilizer and narcotic cough
> suppressants.

(Id. at 21.)  She states that she used "a narcotic cough suppressant" that resulted in "cognitive

impairment and almost continuous sleep."  (Id. at 30.)  Had she been in better health, she would

have been able to better research and comprehend her legal options.  (Id. at 30-31.)  According to

plaintiff, defendants Deeb and Liebling "exploited her medical condition" to facilitate the waiver

of claims.  (Id. at 21.)

The Complaint catalogs a variety of factors that plaintiff contends prevented her

from knowingly executing the contracts.  Plaintiff asserts that she was impaired by a lung

infection, using "a narcotic cough suppressant" called Hydromet, experiencing emotional

distress, and using prescription Lorazepam. (Id. at 15, 30.)  She alleges that she suffered from

severe lapses in short-term memory, and as an example, discusses a company-issued

BlackBerry® that she misplaced for weeks.  (Id. at 13-14.)  She "also did not understand

complex analytic tasks at the contracts," and attributes her condition to a condition called

"anterograde amnesia."  (Id. at 14-15.)  By way of comparison, she notes that after her own

father suffered a stroke, he too struggled with speech and memory difficulties.  (Id. at 14-15.)

Plaintiff asserts that Barclays exploited her weakened condition to enter "an

unconscionable contract with grossly unfair settlement amounts relative to other disability

cases."  (Id. at 49.)  As a consequence, the Complaint alleges, plaintiff agreed to waive any

claims in exchange for an unfair settlement payment.  (Id. at 45-46.)  She notes that in other

disability discrimination and sexual harassment cases, plaintiffs have received damages awards

ranging from $300,000 to more than $11 million.  (Id. at 45-46.)

According to the plaintiff, the agreement was negotiated with the assistance of an EEOC mediator.  (Id. at 18.)  "The EEOC mediator was a cancer survivor, and Kara was disabled at the time of the agreement."  (Id. at 18.)  She states that the mediator "shared the common bond of disability with Kara."  (Id. at 29.)

The Complaint annexes 19 exhibits.  While central to many of her allegations, the plaintiff does not attach a copy of the agreements that she executed with Barclays in May 2011.  The index of plaintiff's exhibits includes entries for "EEOC Settlement Agreement" and "Barclays Termination Contract," and lists them as exhibits 20 and 21 to her Complaint.  (Id. at 54.)  The index entries for these exhibits both state, "CONFIDENTIAL DISCOVERY."  (Id. at 54.)

### D.  Plaintiff's Allegations of Events Subsequent to Her Termination.

Plaintiff asserts that her termination has led to the cessation of certain medical treatments.  (Id. at 41.)  She states that as a consequence of termination, "she suffered emotional stress resulting in "a nervous breakdown with physical tremors and shaking."  (Id. at 41-42.)

Plaintiff states that in November 2011, she was diagnosed with immune deficiencies.  (Id. at 24.)  Plaintiff states that she has a primary immune deficiency which means that part of the immune system is missing or functions improperly."  (Id. at 25.)  As characterized by plaintiff, "Her case may be the first ever case filed in a United States District Court for disability employment discrimination associated with a primary immune deficiency."  (Id. at 25.)  She notes that she is also HIV-negative and free of "other bacterial, viral or fungal infections."  (Id. at 25.)  However, she states that her immune deficiency is in some ways comparable to HIV and that guidelines for HIV-positive employees "would be relevant to reasonable accommodation for Kara's disability."  (Id. at 36.)  The Complaint appears to quote

extensively from guidelines concerning employer treatment of employees with HIV or AIDS. (Id. at 36-38.)

Plaintiff asserts that she subsequently recovered from her illness.  (Id. at 42.) From March 2011 to March 2012, she suffered "only one lung infection and no severe asthma attacks."  (Id. at 42.)  She is currently undergoing immunization for allergies.  (Id. at 43.)

According to plaintiff, in November 2011, she requested that Barclays re-hire her. (Id. at 50.)  Barclays declined.  (Id. at 50.)  Plaintiff characterizes the refusal to re-hire her as retaliation.  (Id. at 50.)  Based on the decision not to re-hire her, she also asserts a claim of promissory estoppel and seeks an order directing Barclays to restore her position.  (Id. at 48-49.)

II.      PROCEDURAL HISTORY.

This action was filed on March 8, 2012.  (Docket # 1.)  On April 3, 2012, plaintiff filed the Amended Complaint.  (Docket # 4.)  Leblang and Barclays filed the motion to dismiss on May 4.  (Docket # 12.)

Since commencing this action, plaintiff has regularly corresponded with the Court, and has submitted numerous letter-briefs related to her claims.  She also has commenced a separate action against Barclays, Leblang and Deeb, as well as the law firm Kramer Levin Naftalis & Frankel, asserting claims that appear to parallel those asserted in this case.  See 12 Civ. 3539 (PKC) (JLC).

On May 10, plaintiff filed a motion captioned as a "Motion for Competency Hearing."  (Docket # 20.)  The motion contends that the Court should weigh evidence as to plaintiff's capacity to enter into the May 2011 agreements.  (Docket # 20.)  Liberally construing plaintiff's submissions in her favor as a pro se party, see, e.g., Johnston v. Maha, 606 F.3d 39, 41 (2d Cir. 2010), the Court will treat plaintiff's "Motion for Competency Hearing" as part of her

opposition to the pending motion, and an assertion that discovery is required to determine whether she executed the settlement agreements under duress.

Separately, on June 20, defendant Martin Baskin, the pulmonologist who examined plaintiff, moved to dismiss plaintiff's claims against him.  (Docket # 48.)  Almost immediately thereafter, plaintiff submitted a memorandum in opposition, which is dated June 21. (Docket # 59.)

RULE 12(b)(6) STANDARD.

In reviewing a Rule 12(b)(6) motion, the Court draws all reasonable inferences in the plaintiff's favor and accepts as true the facts alleged in the complaint.  In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007).  Iqbal, 129 S. Ct. 1937, and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), guide the review of a complaint's legal sufficiency.  A complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'"  Iqbal, 129 S.Ct. at 1949 (quoting Twombly, 550 U.S. at 570).  Plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  Nevertheless, "'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'"  Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97, 106 (1976)).  Courts continue to afford special solicitude for pro se complaints after Iqbal and Twombly.  See Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

DISCUSSION

I.   PLAINTIFF HAS NOT ALLEGED A PLAUSIBLE BASIS TO
     REPUDIATE HER AGREEMENTS.

In support of their motion to dismiss, Barclays and Leblang have filed copies of the EEOC Settlement Agreement (the "Settlement Agreement") dated May 17, 2011, and the

separation agreement (the "Separation Agreement") of the same date.  (Holtzman Dec. Exs. D,

E.)  While the Court is limited to facts as stated in the Complaint, it may consider exhibits or

documents incorporated by reference without converting the motion to dismiss into one for

summary judgment.  See Int'l Audiotext Network, Inc. v. Am. Tel. & Telegraph Co., 62 F.3d 69,

72 (2d Cir. 1995).  The Court may also consider any document integral to the complaint.  Id.

The Complaint discusses the Settlement Agreement and the Separation Agreement and lists them

as exhibits, while ultimately not annexing them, apparently based on the premise that they are

confidential.  (Compl't Narrative at 54.)  Because these documents are integral to the Complaint

and incorporated by reference, they are properly considered by the Court without converting the

motion to dismiss into a motion for summary judgment.

A. <u>The Text of the Settlement Agreement.</u>

The Settlement Agreement states that, "[i]n exchange for satisfactory fulfillment

by [Barclays] of the promises in this Agreement, [Hewett] agrees not to institute a lawsuit under

[Title VII] or the [ADA] . . . based on EEOC Charge Number 846-2011-42100."  (Holtzman

Dec. Ex. D ¶ 1.)  It states that the agreement is not an admission of liability and that its terms are

to remain confidential, absent a breach claim.  (Holtzman Dec. Ex. D ¶¶ 5-6.)  Barclays agreed to

pay Hewett "a total sum of $75,000," in two payments of $37,500.  (Holtzman Dec. Ex. D ¶ 8.)

"This document together with a separate Settlement Agreement and General Release . . .

constitute a final and complete settlement of the entire agreement between the parties."

(Holtzman Dec. Ex. D ¶ 7.)

B. <u>The Text of the Separation Agreement.</u>

The Separation Agreement states that it "is an agreement and release . . .

concerning your separation from employment with Barclays Capital Inc., Barclays PLC, and/or

their affiliates . . . ."  (Holtzman Dec. Ex. E at 1.)  It states that the effective termination date was

May 6, 2011.  (Holtzman Dec. Ex. E at 1.)  Under the heading "Consideration," it states: "If you

sign and comply with this Agreement, you will be entitled to payments in the gross amount of

$75,000."  (Holtzman Dec. Ex. E at 1.)  It states that plaintiff would be paid in two installments

and that any health benefits would end on May 31, 2011.  (Holtzman Dec. Ex. E at 1.)  It further

states:

> In exchange for the consideration payment set forth above to which
> you agree you are not otherwise entitled, you hereby release
> Barclays and/all of its past and/or present . . . employees, agents,
> representatives, . . . attorneys, . . . fiduciaries, . . . in their
> individual and/or representative capacities . . . from any and all
> causes of action, suits, . . . damages, disputes, controversies,
> contentions, . . . claims and demands of any kind whatsoever . . .
> by reason of any act, cause, matter or thing whatsoever arising out
> of your employment and/or cessation of your employment with the
> Bank . . . .   Such released Claims also include . . . any and all
> claims waivable by law under Title VII of the Civil Rights Act of
> 1964 . . . [and] the Americans with Disabilities Act . . . .

(Holtzman Dec. Ex. E at 1-2.)  The Separation Agreement contains a section titled "No Re-

Hire."  (Holtzman Dec. Ex. E at 3.)  It states: "You understand and agree that you will not apply

for or otherwise seek employment with the Barclays Group at any time and that if you do so

apply in the future, you will not be hired."  (Holtzman Dec. Ex. E at 3.)  Above plaintiff's

signature line, the Separation Agreement states as follows:

> I acknowledge that I have read this Separation Agreement
> carefully, have been given adequate time and opportunity to
> consider all of its terms, have been advised to consult with an
> attorney and any other advisor of my choice, and fully
> acknowledge that by signing below I am waiving and releasing all
> Claims against the Bank as described above.   I further
> acknowledge that I have not been pressured in any manner
> whatsoever to sign this Separation Agreement and agree to all of
> its terms knowingly and voluntarily.

(Holtzman Dec. Ex. E at 3.)

Plaintiff signed and dated the signature page of the Separation Agreement and initialed and dated each of the three individual pages of the Separation Agreement in the lower-right corner.  (Holtzman Dec. Ex. E.)  She also initialed two handwritten amendments to the Separation Agreement: one allowing Barclays 10 days – rather than 20 – to make full payment to plaintiff, and a second concerning the deadline for plaintiff to mail Deeb her workplace ID card.  (Holtzman Dec. Ex. E.)  Plaintiff similarly initialed and dated each page of the Settlement Agreement, and signed and dated the Settlement Agreement.  (Holtzman Dec. Ex. D.)

C.   Under New York Law, Plaintiff Has Ratified the Agreements.

"It is true that a general release is governed by principles of contract law." Mangini v. McClurg, 24 N.Y.2d 556, 562 (1969).  Applying New York law, which governs plaintiff's Separation Agreement (Holtzman Dec. Ex. E at 3), the Complaint fails to plausibly allege facts sufficient to set aside the plaintiff's waiver of claims.  Plaintiff has not returned the $75,000 she received in consideration to settle her claims.  A settlement agreement is ratified when a party accepts payment thereunder.  Philips South Beach LLC v. SC Specialty Ins. Co., 55 A.D.3d 493, 493 (1st Dep't 2008).  Acceptance of payment "undermines plaintiff's arguments that it executed the release solely out of duress, and that the agreement is void as against public policy."  Id.  "Furthermore, plaintiff's failure to repudiate the settlement agreement in prompt fashion, as well as its acceptance of the benefits of the agreement, belies its claims of economic duress."  Id. at 493-94; accord Mendel v. Henry Phipps Plaza West, Inc., 27 A.D.3d 375, 376 (1st Dep't 2006) (duress claim "belied by" acceptance of benefits and "failure" to repudiate settlement agreement promptly).  Based on the face of the Complaint, plaintiff has not returned the $75,000 paid to her in consideration, and instead proposes to place the $75,000 in escrow only if "a judge voids the existing settlement agreements . . . ."  (Compl't Narrative at 2.)  By her

conduct, she seeks to retain the benefit of the bargain while circumventing her own obligations thereunder.  Under New York law, however, she has ratified the agreement, and may not now avoid its terms.

### D.   Plaintiff Has Not Alleged Facts that Support Her Duress Allegations.

Separately, to the extent that the Complaint seeks to void the contract on grounds of duress, plaintiff fails to state a claim.  Under New York law, "'[r]epudiation of an agreement on the ground that it was procured by duress requires a showing of <u>both</u> (1) a wrongful threat, and (2) the preclusion of the exercise of free will.'"  <u>Duane Morris LLP v. Astor Holdings Inc.</u>, 61 A.D.3d 418, 418-19 (1st Dep't 2009) (emphasis in original) (quoting <u>Fred Ehrlich, P.C. v. Tullo</u>, 274 A.D.2d 303, 304 (1st Dep't 2000)); <u>accord</u> <u>Bank of Am. Sec. LLC v. Solow Bldg. Co. II, LLC</u>, 47 A.D.3d 239, 259 n.4 (1st Dep't 2007).

As alleged in the Complaint, the agreements were reached during the course of EEOC mediation.  (Compl't Narrative at 18, 29.)  Generously read, the Complaint does not allege a threat that could plausibly be inferred to have deprived plaintiff of free will.  Deeb's failure to accommodate plaintiff's medical needs, the Barclays-directed medical examinations in April 2011 and plaintiff's then-inability to fund her own medical care do not amount to threats.  (Def. Mem. at 14-16, citing Compl. Narrative at 24-26, 28-29, 41 & Exs. B-E.)  At most, these circumstances are tangentially related to the contract negotiations, and do not constitute the type wrongful threats that go toward duress.  Indeed, New York courts have concluded that more overt actions than those recited by plaintiff are insufficient to support a duress claim.  <u>See</u> <u>Minelli v. Soumayah</u>, 41 A.D.3d 388, 388 (1st Dep't 2007) ("[A] mere threat that does not force the other party to accede to some further demand does not constitute economic duress."); <u>767 Third Ave. LLC v. Orix Capital Markets, LLC</u>, 26 A.D.3d 216, 218 (1st Dep't 2006) ("The

threatened exercise of a legal right cannot constitute duress."); <u>Boshes v. Williamson, Picket, Gross, Inc.</u>, 276 A.D.2d 257, 258 (1st Dep't 2000) (enforcing releases at pleading stage because "[d]efendants' mere threat to breach a contract to pay commissions unless plaintiffs signed the releases did not constitute duress, and their purported knowledge of plaintiffs' alleged financial straits was merely 'hard bargaining tactics.'") (internal citation omitted).

Plaintiff notes that she did not consult with an attorney prior to executing the agreements, and that legal counsel may have facilitated more favorable settlement terms.  As quoted above, the Separation Agreement expressly advised plaintiff to confer with counsel. (Holtzman Dec. Ex. E at 3.)  When the text of an agreement advises a party to consult with legal counsel, it is "sufficient" evidence that a claim was knowingly waived.  <u>See</u>, <u>e.g.</u>, <u>Pallonetti v. Liberty Mutual</u>, 2011 WL 519407, at *7 (S.D.N.Y. Feb. 11, 2011) (Sweet, J.); <u>Parker v. Chrysler Corp.</u>, 929 F. Supp. 162, 166-67 (S.D.N.Y. 1996).

### E.  Plaintiff Does Not Plausibly Allege Incapacity.

"A party's competence to enter into a contract is presumed, and the party asserting incapacity bears the burden of proof."  <u>Er-Loom Realty, LLC v. Prelosh Realty, LLC</u>, 77 A.D.3d 546, 548 (1st Dep't 2010).  In asserting that she was impaired by medication and/or illness, plaintiff must allege a prima facie case that she was "incompetent to comprehend and understand the nature of the transactions underlying the agreement."  <u>Id.</u>  A party may also lack capacity if, "due to [her] mental illness, [she] was unable to control [her] conduct."  <u>Smith v. Comas</u>, 173 A.D.2d 535, 535 (2d Dep't 1991).  Plaintiff's bare allegation that her waiver was unknowing due to emotional distress and the related affects of a prescription drug do not, without more, allege a prima facie case that she was unable to understand her contract or the nature of her agreements.  <u>Knox v. HSBC Bank, USA</u>, 16 A.D.3d 199, 199 (1st Dep't 2005) (bipolar

disorder did not render party incompetent to enter into contracts); Blatt v. Manhattan Medical Grp., 131 A.D.2d 48, 52-53 (1st Dep't 1987) (severe depression not a basis for incapacity).  Blatt noted that courts should cautiously approach contentions of incapacity, lest parties be encouraged to challenge enforceable agreements.  Id. at 53.

While plaintiff asserts that negotiations arose "at an unusual and inappropriate time" (Compl't Narrative at 29) and that her illness prompted "extremely poor" decisions, (Compl't Narrative at 16), this does not plausibly allege incompetency, lack of understanding or lack of control over her actions.[1]  Indeed, her supporting contentions partly involve allegations that she now believes $75,000 was inadequate consideration, due largely to settlement amounts that she identifies in wholly unrelated cases.  (Compl't Narrative at 45-46, 49.)  These allegations do not support an incapacity claim.

Plaintiff's allegations as to incompetence are conclusory, and do not support voiding her agreements to waive any claim against the defendants.

F.   Plaintiff's "Motion For Competency Hearing" Does Not Support Her Contentions as to Duress or Incapacity.

As noted, in reviewing this motion to dismiss, I have reviewed plaintiff's submission captioned "Motion For Competency Hearing," which was filed on May 10, 2012, generously construing it as an argument that she has adequately alleged incompetence to enter into contracts and that discovery is needed to prove her claims.  (Docket # 20; see also Docket #

---

[1] In opposition, plaintiff cites various other factors that she argues weigh against her capacity, including that she "was in a weak bargaining position because she was an inhaler-dependent asthmatic with a referral to Yale Hospital," that her doctor "could have signed for FMLA, accommodation or a disability leave," and that the contract includes no mention of lung infections or asthma.  (Pl. Opp. Mem., Docket # 17, at 12.)  She states, "The Plaintiff experienced pneumonia as a child.  She had many memories of severe lung infections, and the last lung infection at Barclays cleared very slowly bringing memories from her childhood with pneumonia.  The Plaintiff was hysterically upset."  (Pl. Opp. Mem., Docket # 17, at 13.)  She states that the cancellation of her insurance following execution of the agreements was coercive.  (Id.)

19 (letter-brief discussing lack of psychiatric scrutiny concerning plaintiff's lung-infection medication).)

In this submission, plaintiff requests the Court to preside over a hearing into her mental condition at the time that she executed the agreements of May 17, 2011.  (Docket # 20, at 1.)  Plaintiff recites various factors that she contends impaired her competency, including "two weeks with green and blood filled tissue samples before the termination and within weeks of settlement."  (Docket # 20.)  Plaintiff states that the stress amounted to "a loss of free will for the contract," and observes, "'Most of our thinking is below our awareness.  Our free will is bounded.  We have much less control over ourselves than we thought.'"  (Docket # 20 at 2, quoting Beyond Freud: A Dose of Common Sense.)  She states: "Research by neuroscientists indicates that emotional distress has an extremely strong impact on cognition, thought, and comprehension," thereby depriving individuals of free will.  (Docket # 20, at 6.)  Plaintiff notes that in October 2010, she received a flu shot at Barclays, and observes that, given her compromised immune system, the flu shut may have been ill-advised, presumably contributing to her illness and the resulting personal distress.  (Docket # 20, at 4.)  She again recites the various prescription medications she was taking during her illness, including Ambien, which, plaintiff says, has been known to cause sleepwalking.  (Docket # 20, at 7-8.)  She states that Barclays should, at the least, have recognized her impaired condition upon being informed that she could not locate her employer-issued Blackberry.  (Docket # 20, at 8.)

For the reasons already discussed, however, plaintiff's assertions do not support her allegations of duress and coercion.  They consist of generalized representations about the limitations on human free will, particularly when influenced by stress or prescription medication.  Plaintiff does not set forth concrete, factual assertions that reflect an inability to understand the

contract terms or to control her conduct, however.  Plaintiff's motion seeking a competency

hearing does not defeat defendants' motion to dismiss.


II.   BECAUSE NO DEFENDANT IS A STATE ACTOR, PLAINTIFF'S
      CONSTITUTIONAL CLAIMS ARE DISMISSED.

Separate and apart from the waiver of her claims, plaintiff fails to plausibly allege

a violation of the U.S. Constitution.  As noted, plaintiff asserts that her Fourth Amendment and

due process rights were violated due to an allegedly unlawful strip search that occurred in the

context of a medical examination.  Assuming solely for the sake of this motion that such conduct

could be described as a "strip search," it occurred during review by a private physician.  Plaintiff

does not allege that any defendant is a state actor, nor, it appears, could she plausibly do so.

Because a constitutional violation arises only when a defendant is a state actor, plaintiff's Fourth

Amendment and due process claims are dismissed.  See, e.g., American Mfrs. Mut. Ins. Co. v.

Sullivan, 526 U.S. 40, 49-50 (1999); Skinner v. Railway Labor Executives' Ass'n, 489 U.S. 602,

614 (1989) ("the Fourth Amendment does not apply to a search or seizure, even an arbitrary one,

effected by a private party on his own initiative," and is not implicated in breath and urine tests

required by private employers); Cranley v. Nat'l Life Ins. Co. of Vt., 318 F.3d 105, 111 (2d Cir.

2003) ("a plaintiff must show that the allegedly unconstitutional conduct is 'fairly attributable' to

the state.").

III.   TITLE VII AND THE ADA DO NOT PROVIDE FOR INDIVIDUAL
       LIABILITY.

Title VII and the ADA establish liability as to employers only, and do not provide

for liability as to individuals.  See, e.g., Sassaman v. Gamache, 566 F.3d 307, 315-16 (2d Cir.

2009) (Title VII); Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009) (ADA).  Therefore, even if she

had not validly waived all claims arising out of her employment, plaintiff's Title VII and ADA

claims would be dismissed as to all individual defendants.


IV.     PLAINTIFF FAILS TO STATE A CLAIM FOR PROMISSORY
        ESTOPPEL.

        Plaintiff asserts a promissory estoppel claim directed toward Barclays's refusal to

rehire her.  "To establish a claim for promissory estoppel, a plaintiff must allege (1) a clear and

unambiguous promise, (2) reasonable and foreseeable reliance by the party to whom the promise

is made, and (3) an injury sustained in reliance on the promise."  Sabre Int'l Sec., Ltd. v. Vulcan

Mgt., Inc., 95 A.D.3d 434 (1st Dep't 2012) (quotation marks omitted).  As noted, the Separation

Agreement contains an express provision stating that plaintiff would not seek future employment

with Barclays and that in the event she sought such employment, she would not be hired.[2]

(Holtzman Dec. Ex. E at 3.)  Because the Complaint does not allege a clear and unambiguous

promise to re-hire her or any corresponding reasonable reliance, the promissory estoppel claim is

dismissed.

V.      BASKIN'S MOTION TO DISMISS IS GRANTED.

        For the reasons previously explained, Baskin's motion to dismiss is granted.

There is no plausible allegation that he is a state actor.  See American Mfrs., 526 U.S. at 49-50;

Cranley, 318 F.3d at 111.  He cannot be liable in his individual capacity under the ADA or Title

VII.  See Sassaman, 566 F.3d at 315-16; Harris, 572 F.3d at 72.  In opposition to the motion,

---

[2] Plaintiff claims that this provision also is evidence of fraud, arguing that "she believed that she could be rehired at a future date if her health improved," that she "did not understand at the settlement that Barclays was lying to her," and that this language was "hidden from the mediator . . . ."  (Pl. Opp. Mem., Docket # 17.)  She argues that the failure to later re-hire her is evidence of retaliation and/or discrimination based on disability.  (Pl. Opp. Mem., Docket # 17.)  In a letter brief, she also argues that the waiver violates the Family Medical Leave Act.  (Docket # 43.)

plaintiff argues that Baskin practiced criminal disability insurance fraud as part of a conspiracy with defendants Deeb, Leblang and Kuzmycz, and should be liable for various forms of negligence, including a claim characterized as negligence under to the Family Medical Leave Act.  The Complaint does not set forth such causes of action and plaintiff's arguments related thereto are conclusory and speculative.

Baskin's motion to dismiss is therefore granted.

VI.     PLAINTIFF'S CLAIMS ARE DISMISSED AS TO THE NON-MOVING DEFENDANTS.

A. For the Reasons Explained, Plaintiff Fails to State a Claim as to Defendants Diamond, Evans, Baker, Hilas, Kuzmycz and Miskin.

Because the Complaint does not state a claim for relief against the five non-moving defendants, the Court dismisses all claims against these defendants sua sponte.  There is no plausible basis to conclude that they were state actors, and they cannot be held liable in their individual capacities under the ADA or Title VII.  See American Mfrs., 526 U.S. at 49-50; Cranley, 318 F.3d at 111; Sassaman, 566 F.3d at 315-16; Harris, 572 F.3d at 72.

In addition, under the Separation Agreement, the non-moving defendants functioned as "employees, agents, [or] representatives" and have been sued "in their individual and/or representative capacities . . . ."  (Holtzman Dec. Ex. E at 1.)  Plaintiff waived "any and all causes of action … arising out of [her] employment . . . ."  (Holtzman Dec. at 2.)  As such, the Separation Agreement bars her claims against the individual non-moving defendants.

As to defendant Miskin,[3] plaintiff argues that her Complaint "differs from other case law for Americans with Disabilities Act because the complaint includes gross negligence as willful and wanton disregard for United States and New York disability law."  (Docket # 45 at

---

[3] In response to a pre-motion letter submitted by Miskin's counsel, the Court directed plaintiff to show cause as to why Miskin should not be dismissed as a defendant.  (Docket # 38.)

1.)  She argues that Miskin holds himself out "as [an] independent medical witness[]" and is

therefore "held to a higher standard of responsibility" for both "medical and legal knowledge as

related to disability law in an employment situation.  (Docket # 45 at 1.)   Her submission

proceeds to describe alleged mistreatment by supervisors, who purportedly violated the FMLA.

(Docket # 45 at 2.)  These arguments do not support a claim against Miskin.

> **B.  Plaintiff Has Abandoned Her Claims Against Defendants Diamond,
> Evans, Baker and Hilas.**

In one of her several submissions to the Court, plaintiff states:

> The remaining individual defendants – Robert Diamond, Donald
> Gershuny,[4] Michael Evans, Kimberly Baker and Angela Hilas –
> could be removed because the evidence would not substantiate
> gross negligence.

(Docket # 45.)  The Complaint does not allege negligence against these defendants.  While the

plaintiff cannot allege individual liability under Title VII, the ADA or the U.S. Constitution,

plaintiff's abandonment of her claims against these four defendants is an additional basis to

dismiss her claims against them.

In any event, the Complaint's allegations against these defendants do not satisfy

the basic pleading requirements of Rule 8(a).  It identifies defendants Hilas and Baker as

"involved with Kara's requests for reasonable accommodation." (Compl't Narrative at 8.)

Plaintiff alleges that Hilas and Baker were aware of the alleged sexual harassment by Kuzmycz,

and that thereafter, "the conflict about accommodation continued."  (Id. at 11.)  She alleges that

Baker requested a doctor's note, which plaintiff then gave to Kuzmycz.  (Id.)  Plaintiff states that

Baker conferred with Kuzmycz about whether plaintiff could telecommute.  (Id. at 35.)  Except

for these limited, vague allegations, the Complaint appears to include no allegations as to

Diamond, Evans, Baker and Hilas.  A complaint fails to satisfy rule 8(a) when, as here, it "is so

---

[4] The Complaint does not identify Gershuny as a defendant.

Plaintiff's proposed amendment would be futile in light of her execution of

releases.  See, e.g., Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) ("Generally, '[a]

district court has discretion to deny leave for good reason, including futility, bad faith, undue

delay, or undue prejudice to the opposing party.'") (alteration in original) (quoting McCarthy v.

Dunn & Bradstreet Corp., 482 F.3d 182, 200 (2d Cir. 2007).  Moreover, plaintiff's proposed

amendment would not plausibly allege unlawful conduct on the part of Deeb or any treating

physician.

CONCLUSION

The motions to dismiss are GRANTED.  (Docket # 12, 48.)  The Clerk is directed

to terminate the motions, as well as the plaintiff's motion for a competency hearing.  (Docket #

20.)  The Clerk also is directed to enter judgment in favor of all defendants.

Defendants' counsel is directed to transmit copies of all unpublished decisions to

plaintiff within seven (7) days.

The parties are directed to advise the Court in writing within 14 days as to what

effect, if any, this Memorandum and Order has on the related action, Hewett v. Barclays Capital,

12 Civ. 3539 (PKC) (JLC).

SO ORDERED.

Dated: New York, New York
        July 5, 2012

_____
        P. Kevin Castel
        United States District Judge

confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir. 1988).

VII.   PLAINTIFF DOES NOT STATE A CLAIM AGAINST DEFENDANT LEBLANG.

In addition to the foregoing, plaintiff fails to state a claim against defendant Leblang, who is alleged to be liable in his capacity as an attorney for Barclays.  Plaintiff's allegations against Leblang relate to his representation of Barclays in the EEOC mediation and in the drafting and execution of the settlement agreements.  "[A]n attorney who does not represent a party may only be held liable to that party upon a showing of fraud or collusion, or a malicious or tortuous act." Marshel v. Farley, 21 A.D.3d 935, 936 (2d Dep't 2005); see also Alredo Productions, Inc. v. Sandra Carter Productions, Inc., 2006 WL 453248, at *4 (S.D.N.Y. Feb. 22, 2006) (collecting cases). To the extent that the plaintiff employs the term "fraud" and makes related assertions, such allegations are conclusory and implausible as to Leblang.  Because plaintiff's claims are premised solely on Leblang's representation of a third party, it is an additional basis to dismiss her claims against him.

VIII.   LEAVE TO MOVE TO AMEND IS DENIED.

In a letter-brief dated April 20, plaintiff requests leave to move to amend the Complaint.  (Docket # 11.)  She proposes to add a variety of actions arising under New York law and federal law.  Generally summarized, she offers a theory of liability whereby defendant Deeb "created her own medical leave" in violation of New York and federal law and "ordered the Plaintiff to a strip-search medical exam," wherein physicians "made many material errors and omissions" in her diagnosis.  (Docket # 11.)  She argues that she was wrongfully denied leave and short-term disability insurance, as related to her asthma, emotional distress and use of "a tranquilizer, Lorazepam."  (Docket # 11.)

Plaintiff's proposed amendment would be futile in light of her execution of releases.  See, e.g., Holmes v. Grubman, 568 F.3d 329, 334 (2d Cir. 2009) ("Generally, '[a] district court has discretion to deny leave for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party.'") (alteration in original) (quoting McCarthy v. Dunn & Bradstreet Corp., 482 F.3d 182, 200 (2d Cir. 2007).  Moreover, plaintiff's proposed amendment would not plausibly allege unlawful conduct on the part of Deeb or any treating physician.

CONCLUSION

The motions to dismiss are GRANTED.  (Docket # 12, 48.)  The Clerk is directed to terminate the motions, as well as the plaintiff's motion for a competency hearing.  (Docket # 20.)  The Clerk also is directed to enter judgment in favor of all defendants.

Defendants' counsel is directed to transmit copies of all unpublished decisions to plaintiff within seven (7) days.

The parties are directed to advise the Court in writing within 14 days as to what effect, if any, this Memorandum and Order has on the related action, Hewett v. Barclays Capital, 12 Civ. 3539 (PKC) (JLC).

SO ORDERED.

Dated: New York, New York
July 5, 2012

P. Kevin Castel
United States District Judge